At this time, we'll hear Lazo v. Sessions. Good morning. Good morning, Your Honors. May it please the Court, I represent the petitioner in this immigration petition for review. I did not represent him at the hearing level. Principally, or the principal argument I wish to press is that the Board of Immigration Appeals did not follow its own precedence in sort of affirming, in effect, by dismissing the appeal, affirming the immigration judge's use of multiple arrests and convictions for violations, which under New York law are not crimes, in his weighing of factors in deciding whether to grant a discretionary benefit. I'm not, of course, appealing the discretionary benefit because we don't have that jurisdiction. What I'm arguing is that the process set by the Board of Immigration Appeals itself requires a certain amount of due process and that it violated their own way of viewing how you deal with criminal arrests that do not result in convictions, particularly in convictions for the crime of arrest. Didn't he concede much of this conduct and didn't his wife testify to much of the conduct, even if you may be right about the police reports, which I'm not saying you are? But he testified that he pushed her against a wall two to three times. She called the police four times. Then she testified also before the immigration judge that she called the police less than ten times about his conduct. So it's not like it's just the police reports, right? No. And I do want to make that distinction. What the respondent himself or what the evidence showed totally apart from any arrest evidence is, of course, proper for the judge to consider. So to the extent that he admitted throwing a bottle at a car or several of the other things, I don't think he admitted even close to most of the conduct. And in the only instance where there's actually a conviction for a crime, the misdemeanor of obstructing governmental administration, he had been arrested actually for presenting his brother's driver's license when he was pulled over. He was a limo driver. He testified that he really did that by accident, but he took the plea agreement because he didn't want to take the risk of being convicted of a felony, which would have been disaster for him, immigration. Well, right. But I'm just saying he didn't concede actually that he had even committed that crime in terms of knowingly presenting false evidence. So that's the only actual conviction. The other, there are these. You don't need an actual conviction. A police report can be considered by an IJ in making a discretionary determination. Well, that's what I'm asking this court to say is not proper for various reasons. First of all, under the Thomas case itself, which is a BIA case, the BIA case that the board relied on, that was an instance where the board said it was proper to rely on an adjudicating, adjudication of guilt that was not final because it was a jury verdict that was still on appeal. That can't be the basis itself for removal if the case is still on appeal, but they held that because a jury verdict is very reliable. We're not talking about something being a basis for removal. I understand. We're talking about what can be considered in deciding whether to exercise discretion to withhold removal. Right. Which is already something that ought to happen. The question is, should there be some discretionary decision? And I don't see why, if you can consider police reports, I don't see why you can't consider arrests and why you can't consider the person's admission that he did some or all of the things that he was accused of doing. Okay. The latter I agree with. The admission stands on its own. It wouldn't matter whether he was arrested or not. With respect to relying on police reports, in this case there weren't any actual police reports because in New York those are not filed as part of the criminal court record unless you're already at the trial stage and then it's like the equivalent of 3500 material. What's filed is a complaint, a criminal court complaint, which is almost always a hearsay complaint, and that's what they had here. I cite the instances in the record where the complaints were filed. But most of those things did not result in an adjudication of guilt of the crime of arrest. So simply on that basis, I think it should not be considered reliable, particularly if the case is dismissed and particularly because, as I raise in my argument, if a case is simply dismissed, even for a procedural ground or the complaining witness fails to show up in court or something, the defendant has no opportunity to show that he was actually innocent, meaning actually innocent, of the crime charged. And so our system says we're not going to presume that you were guilty of doing this conduct if there's no conviction for it. It's a little more difficult with the violation convictions. Violation convictions here were mostly disorderly conduct or harassment. In the New York criminal courts, frequently a disorderly conduct plea is agreed upon by a defendant because, number one, he's always told by the judge this is not a crime, and it's sort of a fiction. If you're charged with petty larceny, shoplifting, and you plead to disorderly conduct, I mean, that doesn't mean you were really disorderly in the store or something like that. It's just a kind of an accommodation that results in a non-criminal adjudication with some penalty and usually not even an allocution, a plea allocution by the defendant. In deciding whether to grant discretionary relief, I don't think the I.J. is limited to adjudications of criminal conduct. No, no. He can look at other factors. I'm not saying that this, if I were correct and this court were to say the I.J. is not entitled to look at the complaints for cases that were dismissed or the complaints for cases that resulted in a violation conviction that had virtually nothing to do with the initial charge. But look at all these other factors. Yes, he might still be within his discretion to deny the relief based on what he heard from the defendant himself and from the defendant's wife, I mean, not defendant, the petitioner's wife, and any other evidence that he has before him. But what tipped the balance in this case, and that's one of the reasons I showed some of the judge's pre-hearing prejudicial remarks, saying he was convicted, assault, assault, assault, when in fact no conviction here is up for assault, when he said in his finding there were ten arrests for crimes of violence, when I find maybe six arguable crimes of violence, several assaults, one resisting arrest, I mean, they may or may not be crimes of violence, but none of them resulted in convictions. And then, again, if you look at the board's own decision in Eroquin. One may convict crimes that don't result in convictions. Yes, but if- Most crimes don't result in convictions. Well, I think maybe most crimes result in some kind of conviction, but be that as it may, it's not fair to have a judge hold it against somebody when he didn't really have an opportunity, or did have an opportunity, and successfully- You reserved a couple minutes rebuttal, Mr. Duda. We'll hear you then. Thank you. Thank you. May it please the court, Tony Pottinger for the U.S. government in this case. I'll be brief on just a couple points. First, as a threshold matter, as counsel acknowledged just now, both in argument and in his brief, there's no jurisdiction to consider the judge's weighing of discretionary factors. This court held that in Lingang in 2008, which- There's a legal question as to whether it is permitted or appropriate to consider arrests that do not result in convictions. Yes, Your Honor. Isn't that a legal question that gives us jurisdiction? Not necessarily, sir. In that same case, Lingang, that said there's no jurisdiction, it also happened to say that it noted that the IJ, and it did not find fault in this, considered arrests that did not result in convictions. So there the court did not- The issue may not have been raised there. It may not have been, Your Honor. The case is not clear about that, does not identify that. I agree the place to start is jurisdiction, but I'm- Yes, Your Honor. And with respect to those arrests, there is more than just, you know, the charging documents that are in the back of the record. You actually have a pretty lengthy document that starts at page 277 of the record that Petitioner himself submitted as part of the case. It was originally part of his petition for adjustment of status. He then later adjusted that document to reflect, I think it was four further arrests that happened during proceedings themselves. So he provided evidence of this, you know, beyond, you know, any hearsay document. I would even point to just some, without belaboring the point, some specific spots in the record where Petitioner talked about some of this conduct. You know, AR 219, he admitted, you know, pushing his wife probably about four times. But if you didn't have that, if you just had the criminal complaints, is that enough for the IJ to rely on? It is some evidence. Again, what we don't know from the Ling Yang case, because it doesn't specify what the judge relied on there, where the judge did consider arrests that did not result in convictions. But, you know, if we had just arrest reports, you know, only, then that might run afoul of matter of Eric Quinn, which, you know, questioned but did not per se prohibit considering arrest reports. It expressed some concerns about it, but did not say you cannot do this, you know, at all. You know, some other circuits have followed that board decision and embraced it. This circuit has not. You know, the best case I could find, again, was Ling Yang, which I can see doesn't, you know, discuss whether the issue was raised. As for the intemperate remarks that are alleged here, you know, I'd point out that while they may have been inartful, I'll borrow the word from the board decision, they were pretty early in the proceedings. That was back in, like, 2011. What ensued was about two and a half more years of proceedings. A lot of continuances granted in favor of the petitioner, including for, you know, so he could handle some outstanding criminal complaints that he wanted to resolve first before his case. The IJ made sure he accommodated his wife's desire to testify, worked out a solution. Despite the existence of a protection order, she was able to testify, and he made clear on the record, I'm not going to let the attorneys, you know, badger you, and, you know, I realize you're nervous and things like that. So looking at the entirety of the record, the governor's position, there was no due process violation that you should look at. Whether or not there was a fair, a full and fair proceeding, we believe there was, and for this reason the court should deny the petition for review. Thank you. Mr. Duger. Thank you. Just on counsel's first point about the petitioner himself having provided the chart that is in the brief that show all the arrests and the outcome of them, it was very clear in the earlier hearings that Judge Mulligan, Immigration Judge Mulligan, insisted on getting all of that information presented to him. So whether the defense did it or the government did it, the judge wanted that, and we're not ducking the fact that it was there. What I'm basically relying is on the Araquin decision. It was an on-bank decision by the board in the same year as the Thomas decision, and I think that what it does, and it really said we give very, very little weight to arrest reports, and it set kind of a sliding scale. On the one hand, you have a jury verdict, or else a plea of guilty to the crime, where presumably the defendant has allocuted and admitted the commission of whatever the crime is that you're discussing, not some necessarily lesser crime. And on the other hand, you have unverified police reports. You have a third hand, don't you, because you have testimony by the wife that she was a victim of domestic violence, and you have his admissions along those lines. But her testimony was fairly minimal. I mean, she may have tried to minimize it, but she was the petitioner in the application for adjustment of status. She wanted him to stay. She wanted him to be there to be the support of the three children, including the autistic child and all the factors that would have gone on the other side of the scale. That may be, but her testimony is her testimony. She said what she said. Again, I don't dispute that what she said could be used by the IJ. What I dispute is the arrest reports, which in this case are really complaints, criminal court complaints, those being used. I mean, even the IJ in his own decision says there are 18 arrests for crime of violence, where at the beginning of the hearing he said he wasn't even going to consider the two that were still pending, which, by the way, did not result in any misdemeanor convictions either. So, again, my request is fairly narrow. It is just that complaints, arrest reports in cases that do not result in the conviction for the crime charged or the conviction of whatever the crime is that the IJ wants to, in effect, hold against the petitioner, that those should not be considered. They're just not reliable enough, and the fact that there are a lot of them here makes it a worse case for me. But the fact is that out of 18 arrests, there's only one misdemeanor conviction with no jail time and not a crime of violence. Thank you. Thank you both. We'll reserve decision. That's the last case on calendar. Please adjourn court. Court is adjourned.